UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KYLE GREGORY STONE #778454,

    Plaintiff,

v.

N. LARSON,

    Defendant.

                              /

Case No.   2:20-cv-00144

Hon.   Jane M. Beckering
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses the summary judgment motion filed by Defendant Corrections Officer (CO) Larson.   (ECF No. 31.)

The Plaintiff in this case – state prisoner Kyle Stone – filed this civil rights action pursuant to 42 U.S.C. § 1983.   He alleges that his rights were violated while he was confined at the Marquette Branch Prison (MBP).   (ECF No. 1.)   Plaintiff's verified complaint alleges that CO Larson shut off his cell water for four days starting on January 18, 2020, thereby denying Stone drinking water and the ability to flush his toilet during those days.   (*Id.*)   Stone alleges that CO Larson denied him one meal on January 19, 2020.   (*Id.*)

The undersigned respectfully recommends that the Court deny CO Larson's motion for summary in part and grant his motion in part.   The undersigned concludes that a question of fact exists regarding CO Larson's involvement in shutting off the water to Stone's cell and denying Stone water for four days.   Thus,

a question of fact remains regarding (1) whether CO Larson violated Stone's Eighth Amendment rights by subjecting Stone to cruel and unusual punishment and (2) whether Larson retaliated against Stone in violation of his First Amendment rights. However, the undersigned recommends that the Court grant CO Larson's motion for summary judgment on Stone's Eighth Amendment claim that he was denied one meal.

## II. Factual Allegations

Stone alleges that CO Larson shut the water off in Stone's cell for four days beginning on January 18, 2020. (*Id.*, PageID.3.) Stone says he was denied water and had nothing to drink. (*Id.*) Stone says he told Larson that he needed some water because he was feeling dehydrated. (*Id.*) Stone says that Larson told him that he did not care if Plaintiff dies, he will not turn on the water and told the other "shifts to leave it off." (*Id.*) Stone alleges that on the second day, Larson refused to give him his meal. (*Id.*, PageID.4.) According to Stone, Larson told him that "You don't get water or food until you quit acting like a fucking animal and quit writing grievances." (*Id.*, PageID.6.) Stone says that on the third day of the shut-off, he began having headaches, stomach cramps, bleeding lips, mouth sores and a swollen tongue. (*Id.*, PageID.3.) Stone asserts that before Larson left his shift on the fourth day, he turned the water back on. (*Id.*) Stone states that all these events were video recorded. (*Id.*, PageID.6.)

## III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## IV. Eighth Amendment

Stone arguably asserts an Eighth Amendment claim against CO Larson in his complaint. Stone alleges that CO Larson violated his Eighth Amendment rights by shutting off the water to his cell for four days beginning January 18, 2020, and by denying him one meal on January 19, 2020. Stone alleges that he was not let out of his cell during the four days.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of

pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). To establish an Eighth Amendment violation the deprivation must have resulted in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

"[T]he Eighth Amendment imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoners

4

receive adequate ... food." *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 832). The Constitution "does not mandate comfortable prisons," however. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Temporary inconveniences, such as being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, fail to demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)).

### A. Shutting off the water

In his affidavit, Larson states he worked the afternoon shift during the relevant period and denies that he shut Stone's water off or that he was aware that Stone's water was turned off in his cell. (ECF No. 32-4, PageID.160.) Larson also states that he was not aware that Stone had a need for medical care. (*Id.*)

Captain Sebaly worked the day shift during the relevant period and was Larson's supervisor in January of 2020. (ECF No. 32-5, PageID.163 (Sebaly's affidavit).) Captain Sebaly attests that Stone was not on a water restriction between January 18 and 22, 2020, and he never observed Stone without water or in obvious need of medical care. (*Id.*, PageID.164.) Both CO Larson and Captain Sebaly

5

attest that it would be "nearly impossible" for a prisoner to go four days without flushing his toilet because the entire Unit would notice the smell.  (*Id.*)

Stone acknowledges that he did not see Larson shut off his water, but after he had "words" with Larson, Stone could hear someone shut off the water behind his cell. (ECF No. 32-2, PageID.129.)  When asked how he knew Larson shut his water off, Stone stated during his deposition:

> Cause he – when [Larson] came in on the second shift, my water shut off, and I already had problems with him, and I asked him to turn my water back on and he said he wasn't going to run it on because I was – told him I was getting dehydrated after – he cut it off, and he said he don't care if I die, and told other shifts to turn it off.  They wouldn't – they told me I had to talk to Larson for my water to come back on because they're not turning it back on.

(ECF No. 32-2, PageID.128.)

At the very least, Stone's deposition testimony raises an issue of fact regarding Larson's involvement in shutting off water to his cell and in refusing to turn the water on after Stone informed him that his water had been shut off and he was dehydrated. Stone says that he complained to sergeants, lieutenants, and nurses but they were all taking Larson's side.  (ECF No. 32-2, PageID.131.)

CO Larson asserts that all the evidence is contradictory to Stone's claims.  He argues that Stone presents no medical evidence establishing his dehydration claims, and that when he was examined on January 22, 2020, cell side by a nurse, he was observed brushing his teeth and in no apparent distress.  The medical record states in part:

6

> **ASSESSMENT:**
> Other
>
> Spoke with inmate cell side regarding multiple kites he put in for chest, abdominal, groin, testicular pain, dizziness, and headaches. States abdominal/groin pain has been ongoing for 4 months. Denies pain with urination. Reports normal BMS. Denies hematuria. Chest pain has also been ongoing for seversal weeks, and he has been seen by the MP for this- had EKG and lab work done. Inmate was also scheduled for a lab draw and vital sign check today, but was unable to be pulled out due to custody reasons and recent assault on staff. On arrival to his cell, he was standing at his cell front brushing his teeth and appeared in no apparent distress. Inmate will be listed for nursing sick call and rescheduled for post-exposure labs and vitals. Onsite MP made aware of inmate's complaints.

(ECF No. 32-6, PageID.290.) In the opinion of the undersigned, although CO Larson has presented evidence that contradicts Stone's claim, there exists a genuine issue of fact regarding Stone's claim that Larson denied him water for four days and that he made Larson aware that he was dehydrated due to the lack of drinking water.[1] This issue comes down to credibility. The Court cannot make credibility decisions when ruling on a motion for summary judgment.

## B. Denial of a meal

Stone alleges that Larson denied him one meal. It is unclear if Stone is asserting a separate claim based upon the deprivation of one meal. Regardless, the deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation. *See Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir.

---

[1] Stone's claim does not make logical sense since it is unlikely that his water could be shut-off for days without anyone at the prison being aware that he had no access to water. However, the Court cannot take judicial notice of how a prison operates or consider what likely happened. The Court needs a factual basis supported in the record that shows no genuine issue of fact exists before granting a motion for summary judgment under Rule 56. Defendant's motion is not supported with a factual basis showing that no genuine issue of fact exists. For example, there may exist video evidence showing that Stone had access to water. There may be records, such as Log Notes that could establish that Stone's water was working, that he never made a complaint, or that he had access to water. Stone may have received water with meals. Defendant's motion fails to establish the lack of a genuine issue of fact.

1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (same); *see also Berry v. Brady*, 192 F.3d 504, 507-08 (5th Cir. 1999) (denial of a few meals over several months does not state a claim); *Staten v. Terhune*, No. 01-17355, 2003 WL 21436162, at *1 (9th Cir. June 16, 2003) (deprivation of two meals is not sufficiently serious to form the basis of an Eighth Amendment claim); *Cagle v. Perry*, No. 9:04-CV-1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (deprivation of two meals is "not sufficiently numerous, prolonged or severe" to give rise to an Eighth Amendment claim).

In *Richmond*, the Sixth Circuit determined that a prisoner who was deprived of five meals over three consecutive days, and a total of seven meals over six consecutive days, did not state a viable Eighth Amendment claim, because he "does not allege that his health suffered as a result of not receiving the meals." *Richmond*, 450 F. App'x at 456. In *Cunningham*, the Sixth Circuit determined that providing a prisoner only one meal a day for over two weeks was not an Eighth Amendment violation, because the meals provided were adequate to sustain normal health. *Cunningham*, 667 F.2d at 566. *But see, Bailey v. Skytta*, 2:17-cv-187 (6th Cir., Oct. 16, 2020) (ECF No. 72) (denial of eight consecutive meals over three days, while water was shut-off and meals were normally delivered with beverages, was sufficient to overcome summary judgment). To the extent that Stone is asserting that the

8

deprivation of one meal violated his Eighth Amendment rights, it is recommended that the Court dismiss that claim.

## V. Retaliation

Defendant argues that Stone cannot support a retaliation claim because he suffered no adverse conduct. CO Larson argues that Stone cannot prove that he turned off Stone's cell water or that his cell water was turned off.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated by the protected conduct. *Id.*

For the reasons, stated above, it is the opinion of the undersigned that a question of fact exists regarding whether CO Larson was involved in shutting off the water to Stone's cell and was aware that Stone's water had been shut off. For this reason, a question of fact exists regarding whether Stone suffered adverse conduct necessary to establish the second element of a retaliation claim.

## VI. Qualified Immunity

CO Larson argues that he is entitled to qualified immunity because no genuine issue of facts exists establishing that he violated Stone's clearly established rights. Specifically, CO Larson argues that Stone did not have an objectively serious medical need and therefore, no Eighth Amendment violation occurred.

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court

10

considers the state of the law at the second step. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,'" *al–Kidd, supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).
>
> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff, supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if

11

> the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson, supra,* at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix, supra,* at 309 (quoting *Anderson, supra,* at 640–641, 107 S.Ct. 3034; some alterations in original).

*District of Columbia v. Wesby*, 138 S. Ct. 577, 589–90 (2018).

For the reasons stated above, the undersigned concludes that a genuine issue of material fact exists regarding whether CO Larson shut off the water to Stone's cell for four days and refused to turn the water on after Stone complained to CO Larson that he was dehydrated. Case law supports a finding that a claim by a prisoner who fails to receive "sufficient drinking water" to maintain his health because the water was shut off in his cell raises an issue of fact. *Bailey v. Skytta*, 2:17-cv-187, slip op. at 5 (6th Cir., Oct. 16, 2020) (ECF No. 72), citing Dellis, 257 F.3d at 512 (inadequate access to water and toilets – not the complete denial – for three days can violate the Eighth Amendment), and *Johnson v. Lewis*, 217 F.3d 726, 732 (9th Cir. 2000) (inadequate – not the complete deprivation – drinking water for four days raises an Eighth Amendment claim). Stone alleges that he was completely denied water for four days. (ECF No. 1, PageID.3.) Stone alleges that he suffered with dehydration, headaches, stomach cramps, split lips, sores in his mouth, a swollen tongue, and lack of energy due to CO Larson's refusal to turn his cell water back on. (*Id.*, PageID.6.) In the opinion of the undersigned, a question of fact exists on Stone's Eighth Amendment claim that his water was shut off and that he was denied access to water

for four days. A similar question of fact exists on Stone's claim that CO Larson retaliated against him.

## VII. Recommendation

It is respectfully recommended that the Court grant in part and deny in part Defendant Larson's motion for summary judgment as follows:

1. Grant the motion dismissing Stone's Eighth Amendment claim for the denial of one meal;

2 Deny Larson's motion with respect to Stone's Eighth Amendment claim arising out of the refusal to provide him water for four days; and

3. Deny Larson's motion with respect to Stone's First Amendment retaliation claim.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: August 26, 2022

/s/ *Maarten Vermaat*
MAARTEN VERMAAT
U.S. MAGISTRATE JUDGE