UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KYLE STONE #778454,

    Plaintiff,

v

C/O NEAL LARSON,

    Defendant.

NO. 2:20-cv-144

HON. JANE M. BECKERING

MAG. MAARTEN VERMAAT

---

Kyle Stone #778454
*In Pro Per*
Woodland Center Correctional Facility
9036 E. M-36
Whitmore Lake, MI 48189

Scott R. Rothermel (P70711)
Assistant Attorney General
Attorney for Defendant Larson
Corrections Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055
rothermels@michigan.gov

---

**DEFENDANT'S PRETRIAL NARRATIVE STATEMENT**

Defendant Larson, through counsel, provides this Pretrial Narrative Statement in compliance with the Case Management Order entered on September 22, 2022, and in anticipation of the jury trial currently scheduled for November 14, 2022. (ECF No. 41.)

### A.     Brief general statement summarizing claims

Plaintiff, Kyle Stone #778454, (Stone), is a pro se prisoner who is currently incarcerated with the Michigan Department of Corrections (MDOC) at the Woodland Center Correctional Facility (WCC), in Whitmore Lake, Michigan. The MDOC previously incarcerated Stone at the Marquette Branch Prison (MBP), in Marquette, Michigan. Stone's Complaint is filed under 42 U.S.C. § 1983 and

protests infringement of his civil rights, alleging violations of the First and Eighth Amendments of the United States Constitution while incarcerated at MBP. Defendant Neal Larson is a Corrections Officer (C/O) who is employed by the MDOC at MBP.

Stone alleges that on January 18, 2020, C/O Larson shut the water off to his cell. Specifically, Stone testified in his deposition that around 2:30 on January 18, 2020, he noticed the water to his cell had allegedly been turned off. Stone testified that shortly before he noticed the water stopped working, he heard noises behind his cell, in a catwalk area where the water to the cells is allegedly controlled from. Stone testified that he did not actually see C/O Larson turn the water off; his claim that C/O Larson did so is wholly speculative. Indeed, Stone admitted that he cannot prove that C/O Larson turned off his water. Further, Stone testified he had "words" with C/O Larson before the water to cell was allegedly shut off, but he doesn't remember what the words were.

Stone claims the water to his cell was turned off for four days, from January 18–21, 2020, until C/O Larson allegedly turned it back on. During those four days, Stone testified that he was not allowed to leave his cell and could not flush his toilet. As a result of this alleged lack of water, Stone claims he suffered from dehydration, headaches, stomach cramps, split and cracked lips, and had sores in his mouth.

As a result of C/O Larson's alleged actions in turning off the water to his cell, Stone claims C/O Larson violated his Eighth Amendment right to be free from cruel and unusual punishment. Specifically, Stone claims C/O Larson was deliberately

indifferent to his medical needs. Stone also claims that C/O Larson allegedly turned off his water in retaliation for Stone having filed grievances against C/O Larson.

**B.     Brief narrative statement of facts to be offered at trial**

Stone cannot establish the objective component to an Eighth Amendment deliberate indifference claim as Stone did not have a medical condition that was so obvious that even a lay person would recognize that the condition necessitated a doctor's attention.  Further, Stone cannot establish the subjective component, either; there is no record evidence that Stone's cell was ever actually without water and no indication, despite contact with multiple individuals during the time, that Stone was suffering any visible effects of the alleged extended water deprivation he claims in his complaint.

Defendant Larson will produce relevant logbook entries, documents, and medical records at trial.  For instance, the unit logbook does not have any entries demonstrating complaints from Stone.  There is a note and misconduct report that Stone assaulted and battered a nurse by apparently sitting on her, another noting that Stone refused to assume a safe feeding position on January 19 and 20, and yet another that Stone was moved from one cell to another on January 21.  Thus, the logbook corroborates C/O Larson's and then-Lt. Sebaly's affidavits and Stone's own medical records, which showed no complaints about a lack of water and contained record of a clinical nursing encounter on January 22 in Stone's housing unit while

Stone was in his cell. While Stone made numerous complaints to the nurse, none were about lack of water.

The above testimonial and documentary evidence will demonstrate that C/O Larson never shut the water off to Stone's cell.

    **C.**    **List of all exhibits to be offered into evidence at trial**

        1.    Stone Lock History;

        2.    CAJ-278 Special Housing Unit Record forms for Stone;

        3.    Echo Block Log Book;

        4.    CSJ-228 Misconduct Report dated 01/19/20; and,

        5.    Stone's medical record from 01/22/20

    **D.**    **Brief narrative statement as to purpose of each exhibit**

        1.    To establish Stone's exact unit and cells during January 17, 2020, to January 22, 2020.

        2.    To establish that Stone received his daily meals, never complained of a lack of water, refused to assume a safe position for meals on January 19, 2020, and January 20, 2020, and show he was moved to a different cell on January 21, 2020.

        3.    To establish that Stone never complained about lack of water to drink and/or flush his toilet. Also, to show that Stone received a misconduct ticket for assault and battery on a nurse on January 19, 2020 and was reviewed on the ticket. Finally, to show that Stone refused to assume a safe position for meals on January 19, 2020, and January 20, 2020, and show he was moved to a different cell on January 21, 2020.

        4.    To show that Stone was not suffering from the maladies he complains of in his complaint because he assaulted and battered a nurse on January 19, 2020.

        5.    To show that Stone was not suffering from the maladies he complains of in his complaint because he did not make any

complaints about them to the nurse that visited his cell on January 22, 2020.

E. **Names and business addresses of intended witnesses**

1. Defendant C/O Neal Larson
c/o Scott R. Rothermel
Assistant Attorney General – Corrections Division
P.O. Box 30217
Lansing, MI 48909

2. Capt. Eugene Sebaly (May Call)
c/o Marquette Branch Prison
1960 U.S. Hwy. 41 South
Marquette, MI 49855

3. Christy Negrinelli (May Call)
c/o Marquette Branch Prison
1960 U.S. Hwy. 41 South
Marquette, MI 49855

F. **A brief summary of the testimony of each witness listed above**

1. It is anticipated that C/O Larson will testify as to his duties as corrections officer and that between January 18 and 20, 2020 he worked as a corrections officer at MBP. C/O Larson will further testify that between January 18 and 21, 2020, he did not shut the water off to Stone's cell, that Stone never complained to him about medical conditions or a lack of water, that Stone was not on water restrictions, and that he never smelled the smell of an unflushed toilet from Stone's cell nor in the unit between January 18 and 20, 2020.

2. It is anticipated that Capt. Sebaly will testify that he was the lieutenant at MBP and worked between January 18 and 22, 2022, supervising C/O Larson, among other corrections officers. Capt. Sebaly will further testify that he was familiar with Stone through routine interactions and that Stone was not on water restrictions between January 18 and 22, 2020. Capt. Sebaly will further testify that at no time did Stone complain to him about not having water to drink nor the ability to flush his toilet in his cell and that it would be nearly impossible for a prisoner to go four days without doing so because the smell would permeate the unit. Capt. Sebaly will testify he smelled no such smell in the unit between January 18 and 22, 2020.

5

      3.      It is anticipated that RN Negrinelli will testify that she made rounds through Stone's unit on January 22, 2020, and that she had direct contact with him at his cell. As a result, RN Negrinelli documented her interaction with Stone and at no time did he complain that he had been without water for four days and suffered from his claimed maladies, nor had the inability to flush the toilet for four days.

G.    **There were no convictions in this case.**

Respectfully submitted,

*/s/ Scott R. Rothermel*
Scott R. Rothermel
Assistant Attorney General
Attorney for MDOC Defendant
Corrections Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055
rothermels@michigan.gov
Dated: October 14, 2022    P70711

## CERTIFICATE OF SERVICE (EFILE)

I hereby certify that on October 14, 2022 I electronically filed the *foregoing document(s)* together with this *Certificate of Service* with the Clerk of the Court, through the electronic filing system, which will provide electronic copies to parties of record and a hard copy of same was placed in U.S. Postal, First-Class Mail, postage paid, plainly addressed as follows:

Kyle Stone #778454
Woodland Center Correctional Facility
9036 E. M-36
Whitmore Lake, MI 48189

*/s/ Scott R. Rothermel*
Scott R. Rothermel
Assistant Attorney General
Attorney for MDOC Defendant
Corrections Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055
rothermels@michigan.gov
P70711